UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOUSSEF KAMAL EL-ACHKAR,

          Plaintiff,         Civil Action No. 13-11661
                                       Honorable Denise Page Hood
                                       Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 12]

Plaintiff Youssef El-Achkar ("El-Achkar") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

### I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that El-Achkar is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, El-Achkar's Motion for Summary Judgment [11] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On November 12, 2010, El-Achkar filed applications for DIB and SSI, alleging disability beginning on October 1, 2009.  (Tr. 122-35).  His claims were denied initially on March 29, 2011.  (Tr. 57-74).  El-Achkar filed a timely request for an administrative hearing, which was held on February 2, 2012, before ALJ Roy Roulhac.  (Tr. 32-54).  El-Achkar (represented by attorney Fawzea Abusalah) testified at the hearing, as did vocational expert Diane Regan.  (*Id.*).  On February 29, 2012, the ALJ issued a written decision finding that El-Achkar is not disabled.  (Tr. 14-31).  El-Achkar's timely request for Appeals Council review was denied on February 21, 2013.  (Tr. 1-7).  El-Achkar filed for judicial review of the final decision on April 12, 2013.  (Doc. #1).

### B.     Background

#### *1.     Disability Reports*

In an undated disability report, El-Achkar indicated that his ability to work is limited by "neck/lower back injury," "asthma/copd," and "heart condition."  (Tr. 152).  In response to the report's question, "Do your conditions cause you pain or other symptoms?" El-Achkar answered, "No."  (*Id.*).  El-Achkar also reported that his conditions did not cause him to make changes to his job duties.  (*Id.*).  He indicated that he stopped working on October 1, 2009, due to "other reasons" – namely, that he was "laid off."  (*Id.*).  Despite the foregoing representations, El-Achkar reported that his conditions became severe enough to keep him from working on that same date.  (*Id.*).

El-Achkar completed high school in 1980.  (Tr. 153).  He worked for a few months in 1987 and 1988 as a manufacturing laborer, and then worked for almost 21 years as a restaurant cook.  (*Id.*).  Among other medicines, El-Achkar reported taking Claritin to "help [him] breathe,"

2

Motrin to "reduce[] pain," Prilosec to "reduce[] stomach acid and pain," and Zocor to "reduce cholesterol." (Tr. 155).

In a work history report dated December 19, 2010, El-Achkar reported lifting heavy soup pots, frequently weighing 50 pounds or more. (Tr. 160-61). He indicated that lifting heavy objects can cause him to suffer from shortness of breath. (Tr. 167). In a function report, El-Achkar reported that his ability to work is limited by "numbness throughout the body, can't stay in one place for a while, can't stay in the kitchen [be]cause of shortness of breathe [sic]." (Tr. 169). He indicated that from the time he awakens until going to bed he "sit[s] home all day, [tries] to move, spend time with family." (Tr. 170). He also indicated that he "looks after" his five children and wife. (*Id.*). He claimed that he previously could work, exercise with his son, go out to places, and pick up his daughter, but that he can no longer engage in those activities. (*Id.*). He claimed to "fall down a lot" and not be able to feel his razor while shaving due to numbness. (*Id.*). Although in one section of the report El-Achkar indicated that he does not prepare meals, elsewhere in the report he indicated that he does so weekly. (Tr. 171). He indicated that he can't feel the utensils due to numbness. (*Id.*). He does not do house- or yard-work due to "numbness, back problems, [and not being able to] bend down very well." (Tr. 172). El-Achkar indicated that he goes out and drives alone, and that he goes shopping. (*Id.*). He also indicated that some shopping trips with his children take "a long time." (*Id.*). He can pay his own bills and handle a checking and savings account. (*Id.*). His hobbies include watching TV and "hanging out with the family." (Tr. 173). He indicated that he plays cards with others weekly, and regularly goes to a mosque. (*Id.*).

When asked to identify functions impacted by his conditions, El-Achkar checked lifting, squatting, bending, standing, reaching, walking, kneeling, seeing, and concentration. (Tr. 174).

He indicated that he can lift 20-30 pounds until his shortness of breath "kicks in." (*Id.*). He indicated that he can walk five minutes before needing to rest. (*Id.*). When asked about the side effects of his medicines, El-Achkar indicated that Motrin causes him to be dizzy and Flexeril and Voltaren make it such that he "CANT [sic] DRIVE." (Tr. 176).

### 2. *Hearing Testimony*

At the time of the February 2, 2012 hearing before the ALJ, El-Achkar was 50 years old, allegedly with a sixth grade education.[1] (Tr. 37). El-Achkar's counsel recognized that El-Achkar "doesn't meet any of the listings," but argued that he should still be found to be disabled "given the combination of medical conditions he has, coupled with the side effects of the medications and everything else…" (*Id.*).

El-Achkar testified that as a cook he was required to lift anywhere from 30-50 pounds, but not more than 50 pounds. (Tr. 38-39). He testified that he does not need a cane to walk. In response to the ALJ's question, "Why did you stop working in September of 2009," El-Achkar answered that he "started having numbness on my hand." (Tr. 40). He claimed to have "no feeling" in his hand, which caused problems as a cook because of the need to handle knives. (*Id.*). He testified that after he ceased working as a cook, he looked for work as an Arabic translator, but could not secure employment. (Tr. 41). El-Achkar testified that his other health issues – chest pains, breathing problems, and heart problems – all started in 2010, after he stopped working. (Tr. 42).

When asked, "since all of these heart problems started, what have you been able to do," El-Achkar testified, "…nothing, sir…Nothing. All the time, just, I'm sitting home, lay[ing] down." (Tr. 43). He also testified that he "can't be walking on the stairs because I have a

---

[1] As noted above, El-Achkar previously reported having finishing at least the 12th grade, and later during the hearing he testified to having completed only 11th grade. (Tr. 38).

breathing…a problem, with my breathing…" (Tr. 44). He testified that he cannot lift anything, but that he "never tr[ies]." (Tr. 45). When asked how far he could walk, El-Achkar testified that he could not walk even a block, and that he believed he could only walk from one portion of the hearing room to another due to "breathing problems." (Tr. 45-46). He testified that he could stand "not more than 5, 10 minute[s]," and could sit for a "maximum, maximum [of about] 20, 25 minute[s]." (Tr. 46). He therefore testified that he lays down "all the time." (*Id.*). He testified that he does not drive, does not go to the mosque, and is unable to play with his children. (*Id.*).

El-Achkar testified that he takes Tylenol 3 and Motrin 800 for pain, and Robaxin and Flexeril for numbness. (Tr. 47). He testified that he had been to the Emergency Room the previous night to address neck and back pain he was experiencing. (Tr. 48). El-Achkar testified to suffering from pain in his back, neck and head, and numbness on all of his body parts, but more on the left side. (Tr. 49). He testified that his breathing problems are worsened by "all thing[s]," including talking, walking and using the stairs. (Tr. 50).

    3.    *Medical Evidence*[2]

On December 9, 2009, El-Achkar was seen in the emergency room and was diagnosed with weakness in his left lower extremity and flu-like symptoms. (Tr. 204-23). He underwent an MRI on December 18, 2009, which showed mild diffuse disc bulging in various of his vertebrae, but no disc herniation. (Tr. 409-10). On May 10, 2010, El-Achkar underwent an angio-seal vascular placement. (Tr. 268). On September 30, 2010, he underwent a stress test.

---

[2] El-Achkar's motion is unique in that he states that he "adopts the ALJ's recitation of the medical evidence of this matter (Tr. 21-26), the substance of which is not the basis for this action." (Doc. #11 at 5). El-Achkar's principal challenge is a legal one – that the ALJ's "RFC assessment that [he] could perform light work is contradicted by the remainder of that assessment." (*Id.*). The Court, having thoroughly reviewed the entire record, finds that the ALJ's recitation of the medical record was thorough and balanced. Accordingly, the Court will simply summarize here the medical evidence discussed by the ALJ.

5

(Tr. 236-37). The results showed no "wall motion abnormalities" and that all "chamber sizes were normal." (*Id.*). It was noted that his prior left heart catheterization showed no stenosis. (Tr. 269). He was diagnosed with atypical chest pain and tobacco abuse. (Tr. 268-69). The doctor also noted El-Achkar's complaints that he experienced shortness of breath, which he found likely represented an element of chronic obstructive pulmonary disease and obesity. (*Id.*). El-Achkar also reported a history of asthma. (*Id.*).

On November 18, 2009 and January 19, 2011, El-Achkar's doctor, Mowafak Asbahi, found him to have acute and chronic gastritis and acute proximal duodenitis. (Tr. 198, 454). For these conditions, however, Doctor Asbahi imposed no restrictions other than that El-Achkar eat a soft, bland diet and continue with acid suppression medicine. (*Id.*).

On November 3, 2010, El-Achkar was diagnosed with "decondietioning" [sic]. (Tr. 202-03). However, the record contains no medical evidence of such a condition or its symptoms since November 2010. Finally, the ALJ noted that although the record contains some references to El-Achkar having dyslipidemia, no restrictions were ever placed on him as a result of that condition. (Tr. 20).

                4.       *Vocational Expert's Testimony*

Diane Regan testified as an independent vocational expert ("VE") at the hearing before the ALJ. (Tr. 52-53). The VE testified that her testimony would be consistent with the Dictionary of Occupational Titles unless she noted otherwise. (Tr. 52). The ALJ asked the VE to imagine a claimant of El-Achkar's age, education, and work experience, who "could perform work at the light exertional level. Lifting and carrying not more than 20 pounds occasionally, 10 pounds frequently. Standing and walking six hours, sitting two hours…could occasionally climb ramps and steps; balance, stoop, kneel, crouch and crawl. No repetitive use of hands. Should

6

avoid unprotected heights, dust, fumes, gases and chemicals." (Tr. 52-53). The VE testified that the hypothetical individual could not perform El-Achkar's past work, but could perform other jobs, including visual inspector (1,500 jobs). (Tr. 53). The ALJ then inquired whether, if he reduced the exertional level to a sedentary job with the same limitations, there would be jobs the hypothetical person could perform, and the VE testified that such a person could perform the job of surveillance system monitor (800 jobs). (*Id.*). The VE then testified that competitive employment would be foreclosed if the hypothetical individual needed to be off task 20% or more of the workday in addition to scheduled breaks. El-Achkar's counsel declined the ALJ's invitation to ask any additional questions of the VE. (*Id.*).

  **C.**  **Framework for Disability Determinations**

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

> regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps…. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that El-Achkar is not disabled under the Act. (Tr. 27). At Step One, the ALJ found that El-Achkar has not engaged in substantial gainful activity since October 1, 2009, the alleged onset date. (Tr. 19). At Step Two, the ALJ found that El-Achkar has the following severe impairments: "asthma, chronic obstructive pulmonary disease, disorder of his back, degenerative disc disease, atypical chest pain, angio-seal vascular placement, acute left lower extremity numbness, obesity, and tobacco abuse." (*Id.*). At Step Three, the ALJ found that El-Achkar's impairments do not meet or medically equal any listed impairment. (Tr. 20-21).

The ALJ then assessed El-Achkar's residual functional capacity ("RFC") as follows:

> [El-Achkar] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except being unable to lift/carry more than 20 pounds occasionally and 10 pounds frequently, being unable to stand/walk more than 6 hours and sit more than 2 hours in an 8 hour workday, occasionally being able to climb ramps/stairs, balance, stoop,

>  kneel, and crouch, no repetitive use of his hands, and avoiding concentrated exposure to unprotected heights, chemicals, and dust, fumes, and gasses.

(Tr. 21).

At Step Four, the ALJ determined that El-Achkar was unable to perform his past relevant work as a cook and general laborer because both positions required work at the medium exertional level. (Tr. 26). The ALJ then noted that El-Achkar was considered a "younger individual" (18-49) under the Act at the time of his alleged onset date, but during the pendency of his case, his classification was changed to "closely approaching advanced age." (Tr. 26) (citing 20 CFR 404.1563 and 20 CFR 416.913). The ALJ noted that transferability of job skills was not a material consideration because the Medical Vocational Rules framework supported a finding that El-Achkar was not disabled regardless of whether he possessed transferable job skills. (*Id.*). Applying the Medical Vocational Rules framework, and relying on the VE's testimony, the ALJ determined that El-Achkar is capable of performing a significant number of jobs that exist in the national economy. (Tr. 26-27). As a result, the ALJ concluded that El-Achkar is not disabled under the Act. (Tr. 27).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

In his motion for summary judgment, El-Achkar argues that: (1) "The ALJ's finding in

his RFC assessment that plaintiff could perform light work is contradicted by the remainder of that assessment;" (2) this alleged error resulted in an improper hypothetical being asked of the VE; and (3) assuming the ALJ's finding that El-Achkar could perform light work was erroneous, "he would be considered disabled pursuant to the Medical-Vocational Guidelines (the 'Grids') as of his 50th birthday." The Commissioner disagrees, arguing that El-Achkar's argument misconstrues the definition of "light work," and that the ALJ's decision that El-Achkar is not disabled is supported by substantial evidence.

For the reasons discussed below, the Court finds that the Commissioner's position is correct, and that the ALJ's decision should be affirmed.

> 1. *El-Achkar Misconstrues the Definition of Light Work and the Restrictions in the ALJ's RFC*

El-Achkar argues that "[t]he ALJ's finding in his RFC assessment that plaintiff could perform light work is contradicted by the remainder of that assessment." [11 at 9]. Explaining his argument in more detail, El-Achkar asserts:

> As part of his RFC assessment, the ALJ found that plaintiff was capable of light work (Tr 21). By definition, such work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds… 20 CFR§ 404.1567(b). See, also, SSR 83-10. However, immediately after deeming plaintiff capable of light work, the ALJ's RFC assessment eliminated all work that fits the above definition. He indicated that plaintiff was "unable to lift/carry more than 20 pounds occasionally and 10 pounds frequently," ruling out the lifting requirements that most define light work. In addition, the ALJ found that plaintiff was "unable to stand/walk more than 6 hours and sit more than 2 hours in an 8 hour workday," ruling out the work contemplated by the remainder of the definition. The contradiction is clear – the ALJ found that plaintiff could perform light work, except that he was utterly incapable of performing light work.

[*Id.* at 9-10].

But El-Achkar's premise is simply incorrect; an ***inability*** to lift/carry ***more than*** 20

11

pounds occasionally does not at all "rule out" the lifting requirements found within the definition of light work. As El-Achkar admits, the applicable regulations define "light work" as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR§ 404.1567(b). The relevant portion of the RFC limited El-Achkar to "light work as defined in 20 CFR 404.1567(b) … except being unable to lift/carry more than 20 pounds occasionally and 10 pounds frequently…" (Tr. 21).

While the ALJ's use of the word "except" may be somewhat confusing, he clearly indicates his finding that El-Achkar cannot perform work where he would be required to "lift/carry more than 20 pounds occasionally and 10 pounds frequently." (*Id.*). Far from contradicting the definition of "light work," this portion of the RFC was precisely coterminous with that term; saying that El-Achkar cannot lift "more than" 20 pounds occasionally is the same as saying he can lift up to that weight occasionally. If that is not what the ALJ meant, he would have said that El-Achkar could not lift more than some lower weight, say 10 pounds, occasionally.[3] Accordingly, this portion of the ALJ's RFC was not in error and does not warrant reversal.

Similarly, the ALJ's RFC limitations indicating that El-Achkar is "unable to stand/walk more than 6 hours and sit more than 2 hours in an 8 hour workday," (Tr. 21), are consistent with the requirements for light work. Social Security Ruling 83-10 provides, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday…" SSR 83-10. Again, the RFC (unable to stand/walk "more than 6 hours") and the definition (able to stand/walk for a total of approximately 6 hours) are one and the same.

Because the Court finds that the ALJ's RFC determination was proper, it need not

---

[3] This proves the point; had the ALJ found that El-Achkar could not lift more than 10 pounds occasionally, then his argument would have merit.

address El-Achkar's remaining arguments which assume an incorrect RFC, *supra* at 10-11. Accordingly, the ALJ's decision should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [12] be GRANTED, El-Achkar's Motion for Summary Judgment [11] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: May 30, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 30, 2014.

        s/Eddrey O. Butts
        EDDREY O. BUTTS
        Case Manager